UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEVON SHIVERS,

        Plaintiff,                   Case No. 2:25-cv-97

v.                                          Honorable Sally J. Berens

UNKNOWN CARLSON et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before this Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below. Plaintiff's motion (ECF No. 3), in which he requests the appointment of counsel and to subpoena witnesses, will be denied at this time.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility in Baraga, Baraga County, Michigan. The events about which he complains occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MDOC Hearings Administrator Richard Russell and the following MBP staff: Registered Nurses Unknown Carlson and Brenda James; Hearing Investigator Eric Hemmila;

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Correctional Officer Unknown Fish; and Hearings Officer Thomas Mohrman. (Compl., ECF No. 1, PageID.1–3.)

In Plaintiff's complaint, he alleges that on July 26, 2022, at approximately 8:41 a.m., Defendants Carlson and James came to Plaintiff's cell to conduct COVID-19 testing, and these nurses were accompanied by non-party Correctional Officer Tucker and a non-party correctional officer in training. (*Id.*, PageID.5.) Plaintiff asked Defendant James "about some medical kites that [Plaintiff] ha[d] been writing" and asked "why [he] had not received any response back for any of them."[2] (*Id.*) Plaintiff alleges that Defendant Carlson "began to get loud," and Plaintiff "told her 'I'm not even talking to you and these are simple questions that can be answered right here.'" (*Id.*) Plaintiff also stated: "once again I'm not talking to you, and if you're not here to answer my questions, then [Defendant] James can speak for herself." (*Id.*)

"After this conversation, [Defendant] Carlson then wrote [Plaintiff] a misconduct for 'threatening behavior,'" and Plaintiff claims this misconduct was "falsified." (*Id.*, PageID.5, 11.) In the misconduct report, Defendant Carlson stated:

> During COVID testing on prisoners in Gulf block, I approached [Plaintiff] . . . . He became belligerent with me yelling in a clear, loud voice from approximately 2–3 feet away while making direct eye contact with me, [and] he stated, "you b[****] a[**] dusty slutty ho; Carlson, I'll f[***] you up you dusty ho." (*Id.*) He continued yelling and calling me names for several minutes while I was testing on the gallery.

(*Id.*, PageID.5.)

The following day, July 27, 2022, Plaintiff requested witness statements from Defendants Carlson and James, and he also requested witness statements from four inmates and non-party Correctional Officer Tucker. (*See id.*, PageID.6–9.) Plaintiff believes that the witness statements

---

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

4

from the four inmates and non-party Correctional Officer Tucker support his version of the events. (*See id.*) For example, Plaintiff reports that in non-party Correctional Officer Tucker's witness statement, Tucker said: "While I was on the rock with [Defendant] Carlson when they were testing, I did hear Prisoner Shivers talk to [Defendant] Carlson, and he began to get louder; I moved closer but at no time did I hear any physical threats being said." (*Id.*, PageID.9.) Additionally, one of the other inmates reported: "[Plaintiff] never threatened [Defendant] Carlson; I heard him clearly; he had gotten loud after [Defendant] Carlson ignored him, [and] he began to repeat the question pertaining [to] his medication. Not once did I hear [Plaintiff] threaten the RN or did he call her out her name." (*Id.*, PageID.8 (phrasing in original retained).) Another inmate reported: "I heard [Plaintiff] ask the nurse about 2 kites he previously put in, and the nurse t[old] him 'if they haven't seen him, they didn't get it.' But it was said with an attitude, [and Plaintiff] then said, 'why ya'll on some bulls[***].'" (*Id.*, PageID.9.)

Plaintiff alleges that Defendant Hemmila, the hearings investigator, "refused to count this as sufficient evidence to find [Plaintiff] not guilty" and "refused to get a witness report from [the non-party] . . . correctional officer that was being trained by Tucker." (*Id.*, PageID.10.)

On July 28, 2022, Defendant Fish submitted a witness report indicating that he had been in another part of the unit, the "second gallery," at the time of the interaction between Plaintiff and Defendant Carlson, and Fish "could hear [Plaintiff] yelling at a nurse in an aggressive manner." (*Id.*) Defendant Fish further reported: "I heard him yell 'you stupid a[**] b[****]' multiple times and heard him say 'I'm going to f[***] you up.'" (*Id.*)

On July 29, 2022, Defendant Mohrman presided over Plaintiff's hearing for the threatening behavior misconduct ticket. (*Id.*, PageID.11.) At the hearing, Defendant Mohrman found Plaintiff guilty. (*Id.*) Thereafter, on August 8, 2022, Plaintiff requested a re-hearing. (*Id.*) In Plaintiff's re-

5

hearing request, he stated that he believed that the hearings investigator and other Defendants "conspire[d]" against Plaintiff. (*Id.*, PageID.12.) Defendant Russell denied Plaintiff's re-hearing request. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his Eighth Amendment rights "by [ex]posing him to the cruel and unusual punishments inflicted," "Ninety Amendment rights," and Fourteenth Amendment rights. (*Id.*, PageID.14.) Additionally, the Court construes Plaintiff's complaint to raise First Amendment retaliation claims and Section 1983 civil conspiracy claims against Defendants. As relief, Plaintiff seeks monetary damages. (*Id.*)

## II.     Pending Motion (ECF No. 3)

When Plaintiff filed his complaint, he also filed a motion, in which he requests the appointment of counsel and to subpoena witnesses. (ECF No. 3.)

As to Plaintiff's request for the appointment of counsel, indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel therefore will be denied.

Further, as to Plaintiff's request for the Court to subpoena witnesses, the Court notes that this request is premature. This case is presently before the Court for preliminary review, and following the entry of this opinion and the corresponding order, the Court will refer this action to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program. Mediation in this program occurs before the complaint is served, an answer is filed, or the discovery process begins. Under these circumstances, Plaintiff's request for the Court to subpoena witnesses in this action is premature and will be denied.

Accordingly, Plaintiff's motion (ECF No. 3), in which he requests the appointment of counsel and to subpoena witnesses, will be denied at this time.

### III.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     "Ninety Amendment" Claims

Plaintiff claims that Defendants violated his "Ninety Amendment" rights. (Compl., ECF No. 1, PageID.14.) There is no ninetieth amendment to the United States Constitution. As such, Plaintiff fails to state any claim premised on the violation of his "Ninety Amendment" rights.

### B.     First Amendment Retaliation Claims

The Court construes Plaintiff's complaint to raise a First Amendment retaliation claim against Defendant Carlson regarding the issuance of the July 26, 2022 misconduct charge.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's

8

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that on July 26, 2022, Defendant Carlson, along with Defendant James, non-party Correctional Officer Tucker, and a non-party correctional officer in training, were in Plaintiff's unit, and the nurses were conducting COVID-19 testing. (Compl., ECF No. 1, PageID.5.) Plaintiff asked Defendant James "about some medical kites that [Plaintiff] ha[d] been writing" and asked "why [he] had not received any response back for any of them." (*Id.*) Plaintiff alleges that Defendant Carlson "began to get loud." (*Id.*) Plaintiff "told her 'I'm not even talking to you and these are simple questions that can be answered right here.'" (*Id.*) Plaintiff also stated: "once again I'm not talking to you, and if you're not here to answer my questions, then [Defendant] James can speak for herself." (*Id.*) "After this conversation, [Defendant] Carlson then wrote [Plaintiff] a misconduct for 'threatening behavior,'" which Plaintiff claims was "falsified." (*Id.*, PageID.5, 11.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. It is clear from Plaintiff's complaint that he believes that the July 26, 2022 misconduct charge was false. (*See generally id.*) The Court notes that Plaintiff's own allegations suggest that during Plaintiff's interaction with Defendant Carlson, Plaintiff "g[ot] loud[]," and at some point said, "why ya'll on some bulls[***]."[3] (*Id.*, PageID.9.) However, at this early stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, although Plaintiff has by no means proven his First Amendment retaliation claim,

---

[3] Pursuant to MDOC Policy Directive 03.03.105 regarding prisoner discipline, "threatening behavior" is a class I misconduct charge, and "threatening behavior" is defined as follows: "Words, actions, or other behavior which expresses an intent to injure or physically abuse another person. Such misconduct includes attempted assault and battery." MDOC Policy Directive 03.03.105, Attach. A (eff. Apr. 18, 2022).

9

the Court will not dismiss Plaintiff's retaliation claim against Defendant Carlson.[4] *See, e.g.*, *Mustin v. Wainwright*, No. 23-3671, 2024 WL 3950810, at *9 (6th Cir. Aug. 27, 2024) (discussing that although "temporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" (quoting *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)), the Sixth Circuit "typically avoid[s] sole reliance on temporal proximity"; however, in applying this standard to Mustin's case, concluding that, among other allegations, "Mustin's allegations that the grounds for the misconduct report were contrived, and the 'suspicious temporal proximity' between his complaint and the false report, [we]re sufficient to plausibly establish a retaliatory motivation" (citing *Maben v. Thelen*, 887 F.3d 252, 268 (6th Cir. 2018))).

### C.     Eighth Amendment Claims

Plaintiff alleges that the issuance of the July 26, 2022 misconduct charge and his conviction for that charge constituted cruel and unusual punishment in violation of the Eighth Amendment. (Compl., ECF No. 1, PageID.14.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S.

---

[4] Under certain circumstances, the factual findings at class I misconduct hearings have preclusive effect in this Court. *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013); *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014); *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). The Court's determination that Plaintiff's retaliation claim may not be dismissed at this early stage of the proceedings does not foreclose a subsequent finding that Plaintiff's retaliation claim is in fact precluded as a result of the factual findings at the misconduct hearing.

at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

Here, although Plaintiff alleges in a conclusory manner that Defendants improperly punished him as related to Plaintiff's receipt of, and conviction for, the threatening behavior misconduct charge, Plaintiff fails to state an Eighth Amendment claim against Defendants regarding the misconduct charge. Specifically, Plaintiff describes Defendants' issuance of the misconduct charge as punishment; however, he alleges no facts to suggest that Defendants acted with an improper intent to punish as contemplated by the Eighth Amendment when they issued the misconduct charge. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause

11

of action, supported by mere conclusory statements, do not suffice."). Under these circumstances, Plaintiff fails to allege sufficient facts to show that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

Accordingly, for these reasons, Plaintiff's Eighth Amendment claims against Defendants will be dismissed.

### D.   Fourteenth Amendment Procedural Due Process Claims

Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights by issuing Plaintiff the July 26, 2022 threatening behavior misconduct ticket, convicting him of that charge, and denying his request for a re-hearing. (*See* Compl., ECF No. 1, PageID.14.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In

*Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that he received a threatening behavior misconduct ticket and that he was convicted of this misconduct charge. (*See* Compl., ECF No. 1, PageID.5, 11.) Plaintiff does not indicate what sanctions, if any, he received as a result of the misconduct conviction.

As an initial matter, because Plaintiff does not indicate what sanctions, if any, he received as a result of the misconduct conviction, Plaintiff necessarily fails to show that any sanction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. And, regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation for a limited period or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due

13

Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Accordingly, for these reasons, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendants for the issuance of the July 26, 2022 threatening behavior misconduct ticket, Plaintiff's subsequent misconduct conviction, and the denial of Plaintiff's request for a re-hearing.

### E.    Section 1983 Civil Conspiracy Claims

Plaintiff claims that Defendants "conspire[d]," and the Court construes this statement to raise Section 1983 civil conspiracy claims against Defendants. (Compl., ECF No. 1, PageID.12.)

A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565-66 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, although Plaintiff vaguely alleges that Defendants "conspire[d]," Plaintiff does not allege facts to show that any "agreement" or "plan" existed. (*See generally* Compl., ECF No. 1.)

Instead, Plaintiff's allegations of conspiracy are wholly conclusory. Plaintiff's subjective belief and personal interpretation of the events, without supporting facts, are insufficient to show that Defendants engaged in a conspiracy. As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege *facts* to show an agreement among Defendants, Plaintiff fails to state a plausible Section 1983 civil conspiracy claim.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Plaintiff's motion (ECF No. 3), in which he requests the appointment of counsel and to subpoena witnesses, will be denied at this time. Further, having conducted the review required by the PLRA, the Court determines that Defendants James, Hemmila, Fish, Mohrman, and Russell will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Carlson: "Ninety Amendment" claims, Eighth Amendment claims, Fourteenth Amendment procedural due

process claims, and Section 1983 civil conspiracy claims. Plaintiff's First Amendment retaliation claim against Defendant Carlson remains in the case.

An order consistent with this opinion will be entered.


Dated:   September 19, 2025                       /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  United States Magistrate Judge